COPY

Michael C. Zweiback, CSB No. 143549
Jason P. Gonzalez, CSB No. 178768
Kelly L. Kress, CSB No. 246368
NIXON PEABODY LLP
555 W. Fifth Street, 46th Floor
Los Angeles, CA 90013
Telephone:  (213) 629-6000
Facsimile:   (213) 629-6001
Email:  mzweiback@nixonpeabody.com
        jgonzalez@nixonpeabody.com
        kkress@nixonpeabody.com

Attorneys for Plaintiff Band Pro Film &
Digital, Inc.

FILED

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

12 APR 12 PM 3:33

BY: _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CV12-03226 STC(MRWx)

| | |
|---|---|
| BAND PRO FILM & DIGITAL, INC., a California corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>ARRI INC., a Delaware corporation, and MICHAEL BRAVIN, an individual,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**1. THE COMPUTER FRAUD AND ABUSE ACT**<br>**2. STORED COMMUNICATIONS ACT**<br>**3. UNAUTHORIZED ACCESS TO COMPUTERS**<br>**4. RECEIVING STOLEN PROPERTY**<br>**5. UNFAIR COMPETITION**<br>**6. INVASION OF PRIVACY**<br>**7. CONVERSION**<br>**8. MISAPPROPRIATION OF TRADE SECRETS**<br>**9. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**10. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**11. UNJUST ENRICHMENT**<br>**12. BREACH OF FIDUCIARY DUTY**<br>**13. BREACH OF IMPLIED CONTRACT;**<br>**DEMAND FOR JURY TRIAL** |

# INTRODUCTION

1.     This complaint concerns an ongoing email theft and corporate espionage scheme that started no later than December 2009 and continued through at least June 2010.   Throughout that time period, defendant Michael Bravin ("Bravin") improperly and without authorization hacked into the confidential email account of the Chief Executive Officer of plaintiff Band Pro Film & Digital, Inc. ("BAND PRO").   This email account contained thousands of confidential emails and sensitive information regarding BAND PRO's business plans, customers, pricing and marketing strategies, as well as other highly sensitive and confidential information.   Defendant Bravin provided the obtained information to his employer, defendant ARRI, Inc. ("ARRI"), for ARRI and Bravin to use to compete with BAND PRO and its clients and customers.   These actions seriously harmed BAND PRO, and led to the federal criminal prosecution of Bravin for his illegal hacking activities. (<u>See</u> United States District Court No. CR 11-807-SH).   BAND PRO therefore complains and alleges against defendants Bravin and ARRI as follows:

# THE PARTIES

2.     BAND PRO is a corporation organized and existing under the laws of the state of California.   Its principal place of business is at 3403 West Pacific Avenue, Burbank, California 91505.

3.     BAND PRO is informed and believes, and thereupon alleges, that Defendant ARRI Inc. is a Delaware corporation with its headquarters at 617 Route 303, Blaurett, New York 10913.   BAND PRO is also informed and believes, and thereupon alleges, that ARRI has corporate offices and does business at 600 North Victory Blvd., Burbank, California 91502.

4.     BAND PRO is informed and believes, and thereupon alleges, that Bravin is an individual residing in Los Angeles County, California, within this judicial district.   The acts that give rise to the claim against Bravin occurred within this judicial district, including in Orange and Los Angeles counties.

COMPLAINT FOR DAMAGES; JURY DEMAND

5.     BAND PRO believes that ARRI is vicariously liable for Bravin's acts. At all times surrounding the email hacking activities alleged in this complaint, Bravin was ARRI's Vice-President of Market Development for Digital Camera Products.  BAND PRO is informed and believes, and thereupon alleges, that at all times relevant to this complaint, ARRI knew of, directed, ratified, condoned, encouraged and/or relied upon Bravin's acts.  Further, BAND PRO is informed and believes, and thereupon alleges, that at all times relevant to this complaint, Bravin was acting in furtherance of the business of ARRI and for ARRI's benefit.

## JURISDICTION AND VENUE

6.     Jurisdiction over this action is founded upon 28 U.S.C. §§ 1331, 1332 and 1367.

7.     Venue is proper under 28 U.S.C. § 1391(b) and (c).  Plaintiff and Defendants are doing business in California and/or residing in California. Defendants are subject to personal jurisdiction in California.  The acts that give rise to all claims of this complaint also occurred in this judicial district and the damage to BAND PRO occurred in Orange or Los Angeles Counties in California.

## BACKGROUND

8.     BAND PRO was founded in 1984 by Amnon Band.  BAND PRO is a recognized leader in the film industry for supplying professional cameras, lenses, audio, power and lighting equipment.  BAND PRO has been involved in many blockbuster film productions.

9.     BAND PRO is an exclusive distributor of certain products and camera technology.  BAND PRO and its clients often enter into distributorship agreements which include confidentiality and non-disclosure agreements intended to protect each company's confidential and proprietary trade secret information from disclosure to competitors such as ARRI and other unauthorized third parties.  As a result of and in furtherance of their relationship and contractual agreements, BAND PRO and its clients often each share confidential and proprietary information with

COMPLAINT FOR DAMAGES; JURY DEMAND

each other, including but not limited to engineering, design, sales, marketing, distribution, production, strategy, business plans, contact lists and information, customer information, pricing, and other highly sensitive and confidential information. BAND PRO and its clients take reasonable efforts to maintain the confidentiality of the trade secrets and proprietary information they share, including but not limited to maintaining the secrecy of their pricing and marketing strategies, business plans, customer lists and contact information, by using computer passwords to limit access, and by securing confidentiality and non-disclosure agreements with each other and third parties.

10.     Bravin was employed at BAND PRO from 1995 through 2010. His final position at BAND PRO was Chief Technology Officer. He was also involved in expanding the market for high-definition technology for digital cinema. During his employment with BAND PRO as Chief Technology Officer, Bravin improperly obtained the user name and password for the email account of Amnon Band, BAND PRO's Chief Executive Officer.

11.     In or about December 2009, Bravin resigned at BAND PRO and, in January 2010, joined ARRI. BAND PRO is informed and believes, and thereupon alleges, that Bravin was employed as ARRI's Vice-President of Market Development for Digital Camera Products and worked out of ARRI's Burbank office. In 2010, ARRI introduced a new digital cinema camera called the "Alexa." The Alexa was intended to be a competitor to the cameras, including Sony's, which BAND PRO offered to its customers. BAND PRO is informed and believes, and thereupon alleges, that Bravin's responsibilities at ARRI were marketing, training and education on the Alexa camera, and generally handling the development and marketing of the Alexa camera.

12.     On numerous occasions between December 2009 and June 2010, Bravin intentionally accessed the computer network used in interstate commerce belonging to BAND PRO, without authorization, and obtained information from

COMPLAINT FOR DAMAGES; JURY DEMAND

that computer network.  BAND PRO is informed and believes, and thereupon alleges, that Bravin without permission or authorization used the user name and password of Amnon Band to access the computer network via BAND PRO's secure server and take information from Amnon Band's email account.  This information contained sensitive communications regarding trade secrets, including but not limited to, business plans, customer information, pricing and marketing strategies, as well as other highly sensitive and confidential information relating to BAND PRO and its customers, business associates, and suppliers including but not limited to Sony Electronics, Inc., for which BAND PRO is the largest and most strategically important distributor of high-end professional Sony cameras and other products.

13.    BAND PRO is informed and believes, and thereupon alleges, that on more than one occasion, Bravin used ARRI's computers at the ARRI Burbank location to access the BAND PRO computers and Amnon Band's email account. BAND PRO is also informed and believes, and thereupon alleges, that on more than one occasion Bravin forwarded emails containing sensitive and confidential information that he unlawfully obtained from BAND PRO to his colleagues at ARRI.

14.    Bravin, without permission and unlawfully, repeatedly accessed, reviewed, and/or copied thousands of emails from the BAND PRO server on a regular basis for over half a year.  BAND PRO is informed and believes, and thereupon alleges, that Bravin's purpose in doing so was corporate espionage constituting an ongoing intentional and concerted effort to gain confidential, proprietary information of BAND PRO and others, including but not limited to their confidential business plans, pricing, marketing, and customer information, and thereby to provide ARRI an unfair business advantage against its competitors, including in bringing its ARRI Alexa camera to market.  BAND PRO is informed and believes, and thereupon alleges, that Bravin saved or forwarded, either directly

COMPLAINT FOR DAMAGES; JURY DEMAND

or verbally, the information obtained from the BAND PRO emails to other ARRI executives and employees.

15.    BAND PRO is informed and believes, and thereupon alleges, that at all times that Bravin undertook his actions of hacking the email account of Amnon Band, he was an employee and officer of ARRI.  BAND PRO is further informed and believes, and thereupon alleges that Bravin undertook this course of action with the knowledge and consent of ARRI.  In particular, BAND PRO is informed and believes, and thereupon alleges that Glenn Kennel ("Kennel") and Bill Russell ("Russell"), executives of ARRI, had firsthand knowledge of Bravin's hacking activities.  BAND PRO is informed and believes, and thereupon alleges, that ARRI knowingly used competitive information gathered by Bravin from the email account of Amnon Band for its own advantage, including to compete against BAND PRO and its customers in the marketing of ARRI's Alexa camera.

16.    On or about August 22, 2011, Bravin was charged federally for his email hacking.  Bravin was arraigned on or about September 12, 2011,  and, on or about September 22, 2011, pleaded guilty to unlawfully accessing BAND PRO's email in violation of 18 U.S.C. § 1030(a)(2)(c).  Bravin signed a plea agreement with the United States Attorney's Office on August 18, 2011, which was filed on September 22, 2011.  In the "Nature of the Offense" section of Bravin's plea agreement, his crime is described as follows:

> "1) defendant intentionally accessed without authorization or exceeded authorized access to a computer; and 2) by accessing without authorization or exceeding authorized access to a computer, the defendant obtained information from a computer that was used in or affected commerce or communication between one state and another state, or between a state of the United States and a foreign country. **Defendant admits that defendant is in fact, guilty of this offense as described in the single-count information.**" (emphasis added)

- 6 -

Bravin's plea agreement also states the following:

"Defendant and the USAO agree to the statement of facts provided below: "On or about January 19, 2010, in Los Angeles County, California, defendant intentionally accessed the computer used in interstate commerce belonging to Band Pro Film & Digital, Inc. ("Band Pro"), without authorization and obtained information from that computer. Defendant obtained the user name and password for the Band Pro email account of Amnon Band, President and Chief Executive Officer of Band Pro, during defendant's employment with Band Pro. Defendant resigned from Band Pro in December 2009, and began to work for another company. After resigning from Band Pro, from approximately December 2009, through June 2010, including on January 19, 2010, defendant accessed, without authorization, Amnon Band's email account and thereby read Band's emails. The total loss to Band Pro from defendant's unauthorized accessed totaled at least $5,001."

17.   Based on the government's sentencing position filing, it is clear Bravin forwarded emails that he obtained from Amnon Band's email account to colleagues at ARRI on at least two occasions.

18.   The actions of Bravin show a pattern of corporate espionage facilitated by his hacking activities. BAND PRO is informed and believes, and thereupon alleges, that Bravin logged into BAND PRO's emails to retrieve "sensitive information pertaining to Band Pro's business strategies and product information."

19.   As a result of all the activities undertaken by Bravin, individually and on behalf of ARRI, BAND PRO has been individually injured in an amount to be proven at trial. BAND PRO seeks damages, disgorgement, restitution, and indemnification related to Defendants' acts.

///

COMPLAINT FOR DAMAGES; JURY DEMAND

### FIRST CAUSE OF ACTION

### Violation of the Computer Fraud & Abuse Act

### (18 U.S.C. § 1030)

20.    BAND PRO refers to and realleges paragraphs 1 through 18 above as though fully set forth at this point.

21.    The foregoing conduct and actions of ARRI and Bravin constitute violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Subject matter jurisdiction is proper under 28 U.S.C. § 1331.

22.    As set forth more fully above, after Bravin left the employment of BAND PRO, he intentionally accessed the private computer network of BAND PRO, including the servers hosting the email account of Amnon Band, which at all relevant times operated in and affected interstate and foreign commerce. Bravin did so without authorization or permission, and through his unauthorized and improper access thereby obtained thousands of confidential BAND PRO emails, including emails containing sensitive business and competitive information. BAND PRO is informed and believes, and thereupon alleges, that such acts were undertaken with the full knowledge and approval of ARRI, to benefit from the value of the protected competitive information of BAND PRO and others contained on the computers, for the purpose of ARRI's commercial advantage and Bravin's private financial gain.

23.    As a direct and proximate result of the improper conduct of Bravin and ARRI, ARRI has competitively benefited, including in the marketing, introduction, and sales of its Alexa cameras, and BAND PRO has suffered losses exceeding $5,000 during the period between December 2009 and June 2010, and continuing thereafter.

### SECOND CAUSE OF ACTION

### Violation of the Stored Communications Act

### (18 U.S.C. § 2701 et seq.)

24.    BAND PRO refers to and realleges paragraphs 1 through 18 above as

- 8 -

1   though fully set forth at this point.

2       25.    The foregoing conduct and actions of ARRI and Bravin constitute

3   violations of the Stored Communications Act, 18 U.S.C. § 2701 et seq.  Subject

4   matter jurisdiction is proper under 28 U.S.C. § 1331.

5       26.    As set forth more fully above, Bravin knowingly and intentionally

6   accessed the private computer network operated by BAND PRO, including the

7   servers hosting the email account of Amnon Band, which at all relevant times

8   operated in and affected interstate and foreign commerce.  Bravin did so without

9   authorization or permission, and through his unauthorized and improper access

10  thereby obtained thousands of confidential BAND PRO emails stored within

11  BAND PRO's computer network, including emails containing sensitive business

12  and competitive information of both BAND PRO and others.  BAND PRO is

13  informed and believes, and thereupon alleges that such acts were undertaken with

14  the full knowledge and approval of ARRI, to benefit from the value of the

15  competitive information of BAND PRO and others contained on the computers, for

16  the purpose of ARRI's commercial advantage and Bravin's private financial gain.

17      27.    As a direct and proximate result of the improper conduct of Bravin and

18  ARRI, ARRI has competitively benefited, including in the marketing, introduction,

19  and sales of its Alexa cameras, and BAND PRO has suffered losses exceeding

20  $5,000 during the period between December 2009 and June 2010, and continuing

21  thereafter.  BAND PRO further alleges that punitive and exemplary damages are

22  appropriate, as Bravin and ARRI's actions were willful, malicious, oppressive, and

23  fraudulent, in willful and conscious disregard of BAND PRO's rights and have

24  subjected BAND PRO to cruel and unjust hardship.  Pursuant to 18 U.S.C. §

25  2707(c), BAND PRO also seeks its attorney's fees associated with the investigation

26  and prosecution of this action.

27

28     ///

COMPLAINT FOR DAMAGES; JURY DEMAND

## THIRD CAUSE OF ACTION

### Unauthorized Access to Computers

### (California Penal Code § 502)

28.     BAND PRO refers to and realleges paragraphs 1 through 18 above as though fully set forth at this point.

29.     The foregoing conduct and actions of ARRI and Bravin constitute unauthorized access to computers in violation of California Penal Code section 502. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1332 and 1367.

30.     As set forth more fully above, Bravin knowingly accessed the private computer network of BAND PRO, including the servers hosting the email account of Amnon Band, which at all relevant times operated in and affected interstate and foreign commerce. Bravin did so without authorization or permission, and through his unauthorized and improper access thereby wrongfully obtained data including thousands of confidential BAND PRO emails, including emails containing sensitive business and competitive information. BAND PRO is informed and believes, and thereupon alleges, that Bravin and ARRI made use of the data they obtained through Bravin's wrongful access, including to benefit ARRI's business through the value of the competitive information of BAND PRO and others contained on the computers. BAND PRO is informed and believes, and therefore alleges that such acts were undertaken with ARRI's full knowledge and approval.

31.     As a direct and proximate result of the improper conduct of Bravin and ARRI, ARRI has competitively benefited, including in the marketing, introduction, and sales of its Alexa cameras, and BAND PRO has suffered losses exceeding $5,000 during the period between December 2009 and June 2010, including compensatory damages including but not limited to expenditures reasonably and necessarily incurred by BAND PRO to verify the extent of Bravin's access and whether any data was altered, damaged, or deleted by that access. BAND PRO further alleges that punitive and exemplary damages are appropriate, as Bravin and

COMPLAINT FOR DAMAGES; JURY DEMAND

1   ARRI's actions were willful, malicious, oppressive, and fraudulent, in willful and
2   conscious disregard of BAND PRO's rights and have subjected BAND PRO to
3   cruel and unjust hardship.  Pursuant to California Penal Code section 502 (e)(2),
4   BAND PRO also seeks its attorney's fees associated with the investigation and
5   prosecution of this action.

### FOURTH CAUSE OF ACTION

### Receiving Stolen Property

### (California Penal Code § 496(c))

9    32.    BAND PRO refers to and realleges paragraphs 1 through 18 above as
10   though fully set forth at this point.

11   33.    The conduct and actions of ARRI and Bravin constitute receiving
12   stolen property in violation of California Penal Code Section 496.  Subject matter
13   jurisdiction is proper under 28 U.S.C. § 1367.

14   34.    As discussed above, Bravin through his actions in unlawfully hacking
15   into BAND PRO's email servers wrongfully and intentionally took confidential and
16   sensitive BAND PRO emails and other information and provided them to ARRI for
17   Bravin and ARRI's use in competing with BAND PRO and others.  The stolen
18   BAND PRO emails, and the information they contained, constituted BAND PRO
19   property.  ARRI received these stolen BAND PRO emails knowing that the emails
20   and the information they contained had been stolen and wrongfully obtained
21   through Bravin's theft.  ARRI further violated California Penal Code Section 496
22   by concealing and/or failing to disclose its receipt of the stolen property from its
23   true owners, BAND PRO, knowing the property to be stolen BAND PRO property.

24   35.    As a direct and proximate result of the improper conduct of Bravin and
25   ARRI, ARRI has competitively benefited through, including, but not limited to, the
26   marketing, introduction, goodwill, industry recognition and sales of its Alexa
27   cameras, and BAND PRO has been injured and a direct and proximate result, has
28   suffered actual losses exceeding $5,000 during the period between December 2009

and June 2010 and beyond.  Pursuant to California Penal Code section 496(c), BAND PRO seeks three times the amount of the actual damages BAND PRO sustained, as well as its costs and attorney's fees associated with the investigation and prosecution of this action.

### FIFTH CAUSE OF ACTION

### Statutory Unfair Competition – Computer Fraud & Hacking
### (Cal. Bus. & Prof. § 17200; 18 U.S.C. § 1030)

36.    BAND PRO refers to and realleges paragraphs 1 through 34 above as though fully set forth at this point.

37.    The foregoing conduct and actions of ARRI and Bravin constitute unfair competition under California Business & Professions Code § 17200.  Subject matter jurisdiction is proper under 28 U.S.C. § 1367.

38.    Title 18 of the United States Code, Section 1030, makes it a crime to intentionally access without authorization and obtain information from a protected computer operating in or affecting interstate commerce.

39.    As set forth more fully above, without authorization, after Bravin left the employment of BAND PRO, he intentionally accessed the private computers of BAND PRO, including the servers hosting the email account of Amnon Band, all of which operated in and affected interstate commerce, and thereby accessed thousands of confidential emails, including emails containing sensitive business information.  BAND PRO is informed and believes, and thereupon alleges that such acts were undertaken with the full knowledge, approval and/or ratification of ARRI, in order to benefit from the value of the competitive information of BAND PRO and others contained on the computers for the purpose of ARRI's commercial advantage and Bravin's private financial gain.

40.    As a direct and proximate result of the improper conduct of Bravin and ARRI, ARRI has competitively benefited, including in the marketing, introduction, and sales of its Alexa cameras.  The exact benefit to ARRI has not been calculated.

COMPLAINT FOR DAMAGES; JURY DEMAND

BAND PRO requests that ARRI and Bravin be required to disgorge to BAND PRO the value of the confidential, competitive information obtained from the acts of Bravin's hacking and theft of trade secrets.

### SIXTH CAUSE OF ACTION

### Invasion of Privacy

41.  BAND PRO refers to and realleges paragraphs 1 through 18 above as though fully set forth at this point.

42.  This is a claim against both Defendants for invasion of privacy. Subject matter jurisdiction is proper under 28 U.S.C. § 1367.

43.  BAND PRO maintains a secure computer server for hosting its email accounts.  One of those email accounts belongs to Amnon Band, BAND PRO's CEO.  This email account was used for business communications, and contained thousands of emails, including emails containing personal and private communications as well as confidential business communications concerning BAND PRO business strategies, pricing and marketing data, and sensitive customer information.

44.  During his employment with BAND PRO, Bravin improperly gained access to the username and password for the email account of Amnon Band. BAND PRO is also informed and believes, and thereupon alleges, that during his employment with BAND PRO, Bravin gained unauthorized access to various employee email accounts through use of an administrator's account.

45.  Between December 2009 and June 2010, after resigning from BAND PRO, Bravin intentionally and without authorization accessed the email account of Amnon Band.  BAND PRO is informed and believes, and thereupon alleges that Bravin undertook these actions to obtain BAND PRO's confidential, proprietary competitor information, including information regarding ARRI competitors and BAND PRO customers, to use for the benefit of ARRI in marketing the Alexa camera and competing with BAND PRO and its customers.  In the course of

reviewing these emails, Bravin accessed personal and confidential private emails of Amnon Band and others.

46.   BAND PRO is informed and believes, and thereupon alleges, that Bravin undertook these activities personally, as an officer of ARRI, and with the knowledge, approval and/or ratification of other officers and/or employees of ARRI.

47.   Through Bravin's unauthorized access and copying of emails, Bravin and ARRI used confidential, proprietary information of BAND PRO and its clients to improve ARRI's competitive position, including for the purpose of marketing of the Alexa camera.  BAND PRO and its employees have been injured as a result, in that among other things it lost certain competitive advantages to ARRI.  As a direct result, BAND PRO has been injured in an amount that has not yet been determined, but which will be proven at trial.  BAND PRO also seeks punitive damages against both ARRI and Bravin based on Bravin's willful and malicious acts as an officer of ARRI.

## SEVENTH CAUSE OF ACTION
### Conversion

48.   BAND PRO refers to and realleges paragraphs 1 through 18 above as though fully set forth at this point.

49.   This is a claim against both Defendants for conversion.  Subject matter jurisdiction is proper under 28 U.S.C. § 1367.

50.   BAND PRO maintains a secure computer server for hosting its email accounts.  One of those email accounts belongs to Amnon Band, BAND PRO's CEO.  This email account was used for business communications and contained thousands of emails, including emails containing confidential business communications concerning BAND PRO business strategies, pricing and marketing, and sensitive customer information.

51.   During his employment with BAND PRO, Bravin improperly gained

COMPLAINT FOR DAMAGES; JURY DEMAND

1    access to the username and password for the email account of Amnon Band.

2         52.    Between December 2009 and June 2010, after resigning from BAND

3    PRO, Bravin intentionally and without authorization accessed the email account of

4    Amnon Band.  BAND PRO is informed and believes, and thereupon alleges that

5    Bravin undertook these actions to obtain BAND PRO's confidential, proprietary

6    competitor information, including information regarding ARRI's competitors, to

7    use for the benefit of ARRI in marketing the Alexa camera and competing with

8    BAND PRO and its customers.

9         53.    BAND PRO is informed and believes that Bravin undertook these

10   activities personally, as an officer of ARRI, and with the knowledge, approval

11   and/or ratification by other officers and/or employees of ARRI.

12        54.    Through Bravin's unauthorized access and copying of emails, Bravin

13   and ARRI used confidential, proprietary information of BAND PRO and its clients

14   to improve ARRI's competitive position, including for the purpose of marketing of

15   the Alexa camera.  BAND PRO has been injured as a result, in that among other

16   things, it lost certain competitive advantages to ARRI.  As a direct result, BAND

17   PRO has been injured in an amount that has not yet been determined, but which

18   will be proven at trial.  BAND PRO also seeks punitive damages against both

19   ARRI and Bravin based on the repeated willful and malicious acts of Bravin as an

20   officer of ARRI.

### EIGHTH CAUSE OF ACTION

### Misappropriation of Trade Secrets

23        55.    BAND PRO refers to and realleges paragraphs 1 through 18 above as

24   though fully set forth at this point.

25        56.    This is a claim against both Defendants for misappropriation of trade

26   secrets.  Subject matter jurisdiction is proper under 28 U.S.C. § 1367.

27        57.    BAND PRO maintains a secure computer server for hosting its email

28   accounts.  One of those email accounts belongs to Amnon Band, the CEO of

COMPLAINT FOR DAMAGES; JURY DEMAND

BAND PRO.   BAND PRO used this email account to communicate internally regarding confidential and sensitive business and competitive information, including pricing and marketing strategies, customer contacts and preferences, and other trade secret information.   BAND PRO also used this email account to communicate with BAND PRO customers.

58.   Bravin was aware of the confidential and sensitive BAND PRO emails, including the internal BAND PRO emails and the emails to and from BAND PRO customers, and was aware that they constituted confidential, proprietary trade secret information.

59.   During his employment with BAND PRO, Bravin improperly gained access to the username and password for the email account of Amnon Band

60.   Between December 2009 and June 2010, after resigning from BAND PRO and while employed as an officer of ARRI, and without authorization from BAND PRO, Bravin accessed the email account of Amnon Band.  BAND PRO is informed that Bravin accessed and misappropriated thousands of emails from the BAND PRO email account(s), including innumerable confidential internal emails regarding BAND PRO and its clients' business plans, pricing, marketing strategies, customer contacts, and other competitive information constituting BAND PRO trade secrets.   This secret information had significant actual and potential economic value to BAND PRO, including due to the fact that it was not generally known to others.   BAND PRO took reasonable efforts to maintain the confidentiality of its trade secrets and proprietary information, including but not limited to maintaining the secrecy of their pricing and marketing strategies, business plans, customer lists and contact information, by using computer passwords to limit access, and by securing confidentiality and non-disclosure agreements with each other and third parties.

61.   BAND PRO is informed and believes, and thereupon alleges that Bravin undertook these actions to obtain BAND PRO's trade secrets for the benefit

COMPLAINT FOR DAMAGES; JURY DEMAND

of ARRI and Bravin in marketing and selling ARRI products and services, including the Alexa camera.

62.    BAND PRO is informed and believes that Bravin undertook these activities personally, as an officer of ARRI, and with the knowledge, approval and/or ratification of other officers and/or employees of ARRI.

63.    Based on the unauthorized access and copying of emails, Bravin used confidential, proprietary information of BAND PRO to guide ARRI's pricing and marketing efforts and to improve the Alexa camera and its competitive position in the marketplace to the detriment of BAND PRO.  BAND PRO has been irreparably injured as a result, and has lost certain valuable competitive advantages to ARRI. As a direct result, BAND PRO has been injured in an amount that has not yet been determined, but will be proven at trial.  BAND PRO seeks as damages to recover the profits from the sale of products that benefited from the trade secret and proprietary information of BAND PRO, or alternatively, its own lost profits and/or a reasonable royalty.  BAND PRO also seeks punitive damages against both ARRI and Bravin based on the repeated willful and malicious acts of Bravin.

## NINTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

64.    BAND PRO refers to and realleges paragraphs 1 through 18 above as though fully set forth at this point.

65.    This is a claim for interference with prospective economic advantage against both Defendants, arising out of the potential acquisition of BAND PRO by Red.com, Inc. dba Red Digital Cinema ("Red").  Jurisdiction over this claim is proper under 18 U.S.C. § 1367.

66.    Red is the inventor, developer, manufacturer and seller of ultra-high definition, digital still and motion cinema cameras.  In 2008, Red released an industry sensation, the Red ONE 4K digital cinema camera.  In 2009, Red announced a new camera called the Red EPIC, which began selling around the end

COMPLAINT FOR DAMAGES; JURY DEMAND

1   of 2010.  These digital cinema cameras have been used to shoot many blockbuster
2   movies since their introduction.

3       67.   These advances in Red's digital cinema cameras, as well as in its
4   related acquisition and post-production, led to a revolution in filmmaking in
5   Hollywood and elsewhere.  Since their introduction, Red's cameras have been used
6   in several blockbuster movies, setting the new industry benchmark for filming.  In
7   the wake of Red's advances, others were looking to begin development and use of
8   digital cinema cameras.

9       68.   In 2009, Red and BAND PRO had numerous business discussions
10  related to the future of digital cinema cameras and digital high-definition.  Red and
11  BAND PRO had many discussions regarding potential joint ventures.  During these
12  discussions, and subject to terms of a confidentiality agreement, BAND PRO was
13  given access to the workings of the Red cameras, including the specifics of the Red
14  EPIC camera.  Bravin was a part of many of these discussions and aware of certain
15  technical advantages and information related to the Red technology.

16      69.   Beginning in 2009 and continuing through 2010, BAND PRO was in
17  discussions with Red about a potential acquisition.  Red was considering acquiring
18  BAND PRO.  The principal negotiators of the deal were Jim Jannard for Red, and
19  Amnon Band for BAND PRO.  However, Bravin was also aware of the discussions,
20  their sensitive nature, and the importance of their confidentiality.

21      70.   BAND PRO is informed and believes, and thereupon alleges, that
22  when he left BAND PRO, Bravin harbored animosity for BAND PRO.  BAND
23  PRO is informed and believes, and thereupon alleges, that Bravin undertook a
24  course of improper and illegal actions designed to undermine BAND PRO and Red,
25  to the benefit of ARRI.  Red is informed and believes, and thereupon alleges, that
26  ARRI was aware of and condoned and/or ratified the activities of Bravin in this
27  regard because he was an officer of the company and conveyed information to other
28  officers and employees of ARRI.

COMPLAINT FOR DAMAGES; JURY DEMAND

71. BAND PRO is informed and believes, and thereupon alleges, that part of the purpose of Bravin hacking the BAND PRO servers was to gain further information regarding the potential acquisition by Red. BAND PRO is further informed and believes, and thereupon alleges, that Bravin shared with ARRI the fact that Red was attempting to acquire BAND PRO. BAND PRO is informed and believes, and thereupon alleges, that Bravin intended that his hacking activities provide a competitive advantage to ARRI and undermine both Red and BAND PRO.

72. BAND PRO is informed and believes that Red, after learning that Bravin had hacked the BAND PRO email server, was concerned about what information regarding a potential acquisition had been wrongly discovered. Moreover, Bravin being a former BAND PRO employee cast a shadow over BAND PRO's reputation going forward. Consequently, the acquisition of BAND PRO had lost its value to Red.

73. BAND PRO is informed and believes, and thereupon alleges, that Bravin, with ARRI's knowledge and consent, hacked the email system in an effort to gain access to information regarding the acquisition.

74. As a proximate result of Bravin's hacking and the resulting negative publicity this generated, Red determined to not acquire BAND PRO. As a result, BAND PRO was directly damaged in an amount to be proven at trial. Given the malicious and offensive nature of Bravin's activities, BAND PRO should also be entitled to punitive damages against the Defendants.

## TENTH CAUSE OF ACTION

### Negligent Interference with Prospective Economic Advantage

75. BAND PRO refers to and realleges paragraphs 1 through 18 and 64 through 73 above as though fully set forth at this point.

76. This is a claim for interference with prospective economic advantage against both Defendants, arising out of the potential acquisition of BAND PRO by

Red.  Jurisdiction over this claim is proper under 18 U.S.C. § 1367.

77.    Beginning in 2009 and continuing through 2010, BAND PRO was in discussions with Red about a potential acquisition.  Red was considering acquiring BAND PRO.  The principal negotiators of the deal were Jim Jannard for Red, and Amnon Band for BAND PRO.  However, Bravin also was aware of the discussions, their sensitive nature, and the importance of their confidentiality, and owed BAND PRO a duty to not interfere with the potential acquisition.

78.    BAND PRO is informed and believes, and thereupon alleges, that part of the purpose of Bravin hacking the BAND PRO servers was to gain further information regarding the potential acquisition by Red.  BAND PRO is further informed and believes, and thereupon alleges, that Bravin shared with ARRI the fact that Red was attempting to acquire BAND PRO.

79.    BAND PRO is informed and believes that Red, after learning that Bravin had hacked the BAND PRO emails, was concerned about what information regarding a potential acquisition had been wrongly discovered.  Moreover, Bravin being a former BAND PRO employee cast a shadow over BAND PRO's reputation going forward.  Consequently, the acquisition of BAND PRO lost its value to Red.

80.    BAND PRO is informed and believes, and thereupon alleges, that Bravin, with ARRI's knowledge and consent, hacked the email system in an effort to gain access to information regarding the acquisition.

81.    As a proximate result of Bravin's hacking and the negative publicity it generated, Red determined to not acquire BAND PRO.  As a result, BAND PRO was directly damaged in an amount to be proven at trial.  Given the malicious and offensive nature of Bravin's activities, BAND PRO should also be entitled to punitive damages against the Defendants.

## ELEVENTH CAUSE OF ACTION

### Unjust Enrichment

82.    BAND PRO refers to and realleges paragraphs 1 through 18 and 64

COMPLAINT FOR DAMAGES; JURY DEMAND

through 73 above as though fully set forth at this point.

83. This is a claim for unjust enrichment against both Defendants. Subject matter jurisdiction is proper under 28 U.S.C. § 1367.

84. The Defendants' email hacking, unfair competition and other wrongful acts were designed to ensure a competitive advantage to ARRI, including as to their Alexa camera, over BAND PRO and its customers. Defendants' actions unjustly conferred a benefit to them at the expense of BAND PRO.

85. Defendants' acts violate principles of justice, equity and good conscience. Such acts have caused Defendants to be unjustly enriched to the detriment of BAND PRO.

86. As a result of the unjust enrichment of Defendants, BAND PRO seeks an accounting and disgorgement from the Defendants equal to their profits from their sale of their products, including the Alexa camera, based on the unjust benefit they received from the acts set forth above.

## TWELFTH CAUSE OF ACTION

### Breach of Fiduciary Duty; Indemnification

87. BAND PRO refers to and realleges paragraphs 1 through 18 and 64 through 80 above as though fully set forth at this point.

88. This is a claim for breach of fiduciary duty against Defendant Bravin only. Subject matter jurisdiction is proper under 28 U.S.C. § 1367.

89. As Chief Technology Officer of BAND PRO, Bravin was in a position of trust and confidence as an officer of BAND PRO and owed BAND PRO fiduciary obligations, including but not limited to the duty of loyalty.

90. As an employee and fiduciary of BAND PRO, Bravin had a duty to substantially comply with all the lawful directions of his employer concerning the services for which he was engaged, to refrain from self-dealing, to act in his employer's best interests, including but not limited to protecting its trade secrets and other confidential information from misuse and unauthorized disclosure, and to

COMPLAINT FOR DAMAGES; JURY DEMAND

deal fairly and honestly with BAND PRO in the performance of his job as Chief Technology Officer.   Band Pro employee policies governed his employment at BAND PRO, which appeared in its employee handbooks and in other written directives distributed to all employees, including Bravin.  BAND PRO's employee policies provide that certain types of behavior constitute "Prohibited Conduct," as described in its Employee Handbook.  BAND PRO's policies provided to Bravin explicitly state that employees are prohibited at all times from "engaging in criminal conduct" and/or "unauthorized review, duplication, dissemination, removal, installation, damage, or alteration of files, passwords, computer systems or programs…" or "improper use of information obtained by unauthorized means…"

91.   Upon information and belief, BAND PRO alleges that Bravin knowingly failed to comply with applicable laws and regulations and BAND PRO employee policies.

92.   Upon information and belief, BAND PRO alleges that Bravin acted against BAND PRO's interests and violated his duty of loyalty by improperly obtaining the email username and password of BAND PRO CEO Amnon Band. Additionally, throughout his employment at BAND PRO, Bravin acted illegally and against BAND PRO's interests by improperly obtaining, downloading, installing and/or maintaining software without valid licenses on BAND PRO's computers. BAND PRO is informed and believes, and thereupon alleges, that the illegal software continued to reside on and be accessed on BAND PRO's computers through at least July 2010 when BAND PRO was alerted to Bravin's illegal hacking activities. By engaging in this illegal conduct, Bravin failed to exercise the degree of skill, care, diligence and loyalty that a reasonable Chief Technology Officer would have exhibited in the same or similar circumstances.   Upon information and belief, BAND PRO alleges that Bravin knowingly acted in violation of Labor Code sections 2854 and 2856 against BAND PRO's interests and

COMPLAINT FOR DAMAGES; JURY DEMAND

therefore solely for his own benefit in engaging in this conduct.

93.    By virtue of the wrongful acts and omissions attributed to Bravin in paragraphs 1-91, Bravin has breached his fiduciary obligations and duty of loyalty to BAND PRO.

94.    Bravin's actions or omissions resulted in harm to BAND PRO in an amount to be proven at trial.  BAND PRO's damages include the amounts paid to Bravin in salary, bonuses and other perks that Bravin was not eligible or entitled to receive, the costs, liabilities, and penalties associated with the illegal downloading and usage of the software on BAND PRO's computers, and the costs BAND PRO has incurred and will incur relating to this and other civil and criminal actions arising from Bravin's actions and failure to comply with applicable laws, regulations and BAND PRO's directives, and the damage to BAND PRO's reputation and relationship with its actual and potential customers and business partners.  Because the corporation is blameless for Bravin's Prohibited Conduct and Unauthorized Uses of corporate resources as alleged herein, BAND PRO is entitled to indemnification by Bravin for the losses caused by his wrongful acts.

95.    BAND PRO is informed and believes and on this basis alleges that, in breach of his fiduciary obligations to BAND PRO, Bravin is guilty of oppression, fraud and/or malice as factually alleged in paragraphs 1-91, within the meaning of California Civil Code section 3294, entitling BAND PRO to punitive or exemplary damages in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

### Breach of Implied Contract; Indemnification

96.    BAND PRO refers to and realleges paragraphs 1 through 18 and 64 through 80 above as though fully set forth at this point.

97.    This is a claim for breach of contract against Defendant Bravin only. Subject matter jurisdiction is proper under 28 U.S.C. § 1367.

98.    Bravin was employed at BAND PRO from approximately 1995

through December 2009.  BAND PRO employee policies governed his employment at BAND PRO, which appeared in its Employee Handbooks and in other written directives distributed to all employees, including Bravin.  BAND PRO maintains clear policies that require employees to comply with all applicable laws and regulations, and provide that certain types of behavior constitute "Prohibited Conduct," as described in its Employee Handbook.  These policies, which Bravin received and agreed to be governed by while employed at BAND PRO, created an implied contract supplementing the terms and conditions of Bravin's employment with BAND PRO.

99.  BAND PRO's policies provided to Bravin explicitly state that employees are prohibited at all times from the following acts:

- "Theft or the deliberate or careless damage of any Company property or the property of any employee or customer;"
- "Engaging in criminal conduct;"
- "Removing or borrowing Company property without prior authorization;"
- "Unauthorized use of Company equipment, time, materials, or facilities;"
- "Committing a fraudulent act or a breach of trust in any circumstances;" and
- "Any conflict of interest or any attempt to in any way interfere with or disrupt an existing or potential customer relationship with Band Pro."

100.  As to company technology and internet usage, the Company's policy provides that all technical resources are solely "provided for the benefit of the Company and its customers, vendors, and suppliers," and only "for use in the pursuit of Company business, and are to be reviewed, monitored, and used only in that pursuit..."   Under Unacceptable Uses, BAND PRO's technology policy

COMPLAINT FOR DAMAGES; JURY DEMAND

explicitly states:

> "You should never access any technical resources using another employee's password.  Similarly, you should only access the libraries, files, data, programs, and directories that are related to your work duties. Unauthorized review, duplication, dissemination, removal, installation, damage, or alteration of files, passwords, computer systems or programs, or other property of the Company, or improper use of information obtained by unauthorized means, is prohibited."

101.   Upon information and belief, BAND PRO alleges that while Bravin was employed at BAND PRO, it directed Bravin to utilize BAND PRO confidential information and technology, and that of its customers, in a manner that was consistent with all applicable laws, regulations and BAND PRO policies, as detailed above.  BAND PRO fulfilled all of its obligations under the contract by paying Bravin wages and any eligible bonus compensation.

102.   Upon information and belief, BAND PRO alleges that during Bravin's employment with BAND PRO, Bravin violated BAND PRO policies by wrongfully obtaining sensitive information for his own benefit.  BAND PRO alleges that Bravin willfully, deliberately or recklessly violated the terms and policies governing his employment with BAND PRO by gaining unauthorized access to the email account of Amnon Band and computer servers of BAND PRO, and did not act in the sole pursuit of Company business.  He was required to follow BAND PRO's lawful directions and he failed to do so, either intentionally or recklessly.

103.   As a proximate result of Bravin's breach of the parties' implied contract, BAND PRO was directly damaged in an amount to be proven at trial. Because the corporation is blameless for Bravin's Prohibited Conduct and Unauthorized Uses of corporate resources as alleged herein, BAND PRO is entitled to indemnification by Bravin for the losses caused by his wrongful acts.  Given the malicious and offensive nature of Bravin's activities, BAND PRO should also be

entitled to punitive damages against Defendant Bravin.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BAND PRO prays as follows:

1.      That Defendants, jointly and severally, be held liable for violation of the causes of action set forth above;

2.      That Plaintiff be awarded damages against Defendants in an amount to be proven at trial, including treble damages pursuant to California Penal Code Section 496(c);

3.      That Defendant ARRI be ordered to disgorge to Plaintiff its profits from the sale of products benefiting from the acts of unfair competition;

4.      That Defendants, jointly and severally, be held liable for misappropriation of trade secrets, and that Plaintiff be awarded damages equal to Defendants' profits from the sale of products benefiting from the unlawful acts described above;

5.      That Defendants, jointly and severally, be held liable for interference with BAND PRO's prospective economic advantage arising from the failed acquisition by Red;

6.      That BAND PRO be awarded statutory and compensatory damages reasonably calculated to compensate it for its losses, including lost profits and lost goodwill caused by Defendants wrongful acts;

7.      For an order compelling Defendants to return all information obtained by Bravin while hacking the BAND PRO email server;

8.      For an order compelling Defendants to deliver and destroy all business plans and strategies developed in reliance on information gained from Bravin hacking the BAND PRO email server;

9.      That punitive damages be assessed against Defendants and awarded to BAND PRO as a result of their unlawful activities;

10.     That BAND PRO be awarded the amount of the benefits conferred on

COMPLAINT FOR DAMAGES; JURY DEMAND

the Defendants as a result of their unjust enrichment and bad acts;

11.    That BAND PRO be indemnified for the losses caused by Defendants' wrongful acts;

12.    That BAND PRO be awarded its reasonable attorneys' fees and costs; and

13.    That BAND PRO may have such other and further relief as the circumstances of this case may require and as this court may deem just and proper.


DATE: April 12, 2012                    **NIXON PEABODY LLP**


_Michael Zweiback_
_____
MICHAEL ZWEIBACK
Attorneys for Plaintiff Band Pro Film &
Digital, Inc.

COMPLAINT FOR DAMAGES; JURY DEMAND

1

## __JURY DEMAND__

2

3      Plaintiff Band Pro Film & Digital, Inc. hereby requests a trial by jury in this

4   matter.

5

6   DATE: April 12, 2012                    **NIXON PEABODY LLP**

7

8                                           _Michael Zweiback_

9                                           MICHAEL ZWEIBACK
                                            Attorneys for Plaintiff Band Pro Film &
10                                          Digital, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES; JURY DEMAND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

## CV12- 3226 SJO (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Michael C. Zweiback, CSB No. 143549
NIXON PEABODY LLP
555 West Fifth Street, 46th Floor
Los Angeles, California 90013
(213) 629-6000



## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BAND PRO FILM & DIGITAL, INC., a California
corporation

PLAINTIFF(S)

v.

ARRI INC., a Delaware corporation, and MICHAEL
BRAVIN, an individual,

DEFENDANT(S).

CASE NUMBER

**CV12 - 03226** STO(NPWx)

**SUMMONS**

---

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Michael C. Zweiback_____, whose address is _Nixon Peabody LLP, 555 West Fifth Street, 46th Floor, Los Angeles, California 90013___. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

APR 1 2 2012

Dated: _____

Clerk, U.S. District Court

**JULIE PRADO**

By: _____

Deputy Clerk

*(Seal of the Court)*

SEAL

---

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (10/11                                    **SUMMONS**

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BAND PRO FILM & DIGITAL, INC.

**DEFENDANTS**
ARRI INC., a Delaware Corporation, and MICHAEL BRAVIN, an individual

**(b)** County of Residence of First Listed Plaintiff <u>U.S.</u>
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant <u>U.S.</u>
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael C. Zweiback, SBN 143549
Jason P. Gonzalez, SBN 178768   Kelly L. Kress SBN 246368
NIXON PEABODY LLP
555 West Fifth Street, 46th Floor
Los Angeles, California   Tel.: (213) 629-6000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine | Liability | | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Mgmt. Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Med. Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 535 Death Penalty | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district *(specify)*
- [ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* 18 U.S.C. §1030
Brief description of cause:
E-mail hacking and corporate espionage scheme

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ To be determined   CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE Cormac Carney   DOCKET NUMBER 8:11-CV-01972

CV12- 03226

DATE
April 12, 2012

SIGNATURE OF ATTORNEY OF RECORD
*Michael Zweiback*

## FOR OFFICE USE ONLY
RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): 8:11-cv-01972 (CJC) (ANx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
   ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D.  Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  *Kelly L. Kress*   Date 4/12/12

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |